PINE BLUFF COMPRESS & WAREHOUSE CO., PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7989.   Promulgated December 23, 1926.

1. The installation of equipment that reduced competition and
resulted in large profits is not an abnormal condition under sec-
tion 327 (d) of the Revenue Act of 1918 requiring special assess-
ment under section 328 of that Act.

2. The evidence does not establish the existence of alleged
abnormalities due to low salaries and the exclusion of earnings
in prewar years from income for those years for purposes of
computing prewar credit.

*Robert Walston Chubb, Esq.,* for the petitioner.
*Robert A. Littleton, Esq.,* for the respondent.

This proceeding involves a deficiency of $6,373.73 in income and
profits tax for the fiscal year ended August 31, 1919.   Error is
alleged for the reason that the respondent refused to compute the
tax for the year in question under the provisions of sections 327 and
328 of the Revenue Act of 1918.

FINDINGS OF FACT.

The petitioner corporation was organized in March, 1912, to
engage in the cotton warehousing and compressing business at Pine
Bluff, Ark.   The cotton buyers of that locality were responsible for
its organization and they subscribed for and held practically all of
its stock.   At the time of its incorporation, there were two cotton
compresses and storage plants at Pine Bluff.   Both of these were
owned by a Missouri corporation which operated a chain of such
plants.   The petitioner began its operation in a small way in 1912
in the face of strong competition.   Its equipment at the beginning
was limited to one shed, partly covered.   From the date of organi-
zation to the end of the calendar year 1912, the business suffered a
loss of $4,261, but during the next calendar year there was a net
income of $9,670.53.   Additions were made to the plant from time
to time and the business growth continued from year to year.

Some time prior to the fiscal year 1918–1919 (during 1917 or the
first half of 1918), a sprinkler system was installed at a total cost
of $100,144.26.   This was the first sprinkler system installed in the
State of Arkansas by a cotton compressing and warehouse company.
The installation of the sprinkler system reduced the fire risk and
benefited the petitioner in the following manner.

The cost of fire insurance on its plant and equipment was reduced
from $4,023.85 and $3,884.59 in the fiscal years ending in 1915 and
1916, respectively, to $3,204.17 and $2,121.76 for the fiscal years end-

ing in 1917 and 1918, respectively. There was a corresponding reduction in the cost of fire insurance of persons storing their cotton in petitioner's warehouse. By reason of this reduction in fire insurance premiums, the inducement to do business with the petitioner was increased and competition reduced, and the sprinkler fee charged persons patronizing the petitioner became an added source of income. The taxable income of the petitioner increased from $27,112.08 for the calendar year 1917, and $18,034.05 for the first eight months of 1918, to $55,985.08 for the fiscal year in question, which was the first full year of operation with the sprinkler system. A portion of this increase and taxable income was due to a 50 per cent increase in compressing fees which took effect in the summer of 1918.

The original paid-in capital of the petitioner amounted to $38,900, and by April, 1919, by the issuance of various stock dividends, the total issued capital stock amounted to $195,000, and at the close of the fiscal year ended August 31, 1919, there was a net deficit in surplus of $38,862.62.

The officers of the petitioner consisted of the president, vice president and secretary-treasurer. From the date of incorporation through the year in question, the president and secretary-treasurer devoted a part of their time to the affairs of the petitioner, being paid nominal salaries in the early years of the corporation's life, and salaries totaling $1,200 for the fiscal year in question. Three hundred dollars was paid to the secretary-treasurer as a salary during the year in question. The president of the petitioner was instrumental in organizing the corporation and during the fiscal year in question his stockholdings amounted to approximately 750 shares out of a total of 8,000 shares then outstanding of the par value of $25 per share. The president of the petitioner was instrumental in seeing that the business of the petitioner was operated in an efficient manner and that all necessary economies were practiced in the conduct of the business. He owned other businesses, including a wholesale grocery business located at Pine Bluff, Ark., and was engaged in the business of buying and selling cotton, with offices in Pine Bluff and Little Rock, Ark. The secretary-treasurer's stockholdings during the year in question amounted to approximately 1,400 shares. In the early years of the petitioner's life, he supervised the maintaining of books of account of the petitioner without compensation, and as the accounting and bookkeeping needs of the petitioner increased in later years, and during the fiscal year in question, there were employed assistants to perform the detail work, leaving only the broad supervisory work to the secretary-treasurer. In addition to the services rendered petitioner, he was also engaged in operating a plantation in the State of Arkansas. During the

taxable year in question petitioner paid wages and salaries to others than officers totaling $74,800.

When cotton was placed in storage the charges made for handling, storage, and compressing of the cotton were not collected until the cotton was shipped upon order of the owner. The petitioner maintained its books of account during the years 1912 and 1913 upon the cash receipts and disbursements basis, and storage charges on cotton placed in storage prior to the end of each year and remaining in storage until after that date were not reflected on petitioner's books or in its earnings. The audit of the revenue agent, upon which the deficiency in question is based, and which audit was introduced in evidence by the respondent, without objection, states that the petitioner was organized in March, 1912, and in computing the war-profits and excess-profits taxes for the fiscal year in question, determines the prewar credit allowable under section 310 of the Revenue Act of 1918, as follows:

|  | 1912. | 1913. |
|---|---|---|
| Net income for each prewar year—Loss | $4, 261. 00 | $9, 670. 53 |
| Total | | 9, 670. 53 |
| Net total for 1913 | | 9, 670. 53 |
| Average net income for prewar period | | 4, 835. 27 |

OPINION.

MILLIKEN: The petitioner alleges abnormalities within the meaning of section 327 (d) of the Revenue Act of 1918. That subdivision, so far as pertinent to this appeal, provides:

Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, * * *.

The conditions which the petitioner contends bring it within the purview of this subdivision are as follows:

1. Installation of sprinkler system in its plant prior to the taxable year, which resulted in unusual profits within the year.

2. Low salaries paid to its officers during the fiscal year.

3. The income for prewar years was abnormal as 1912 was the year of organization and, as the cash receipts and disbursements basis was used in reporting income for the year 1913, income actually earned was not reflected.

The grounds upon which the petitioner requests consideration under sections 327 and 328 of the Revenue Act of 1918 will be discussed in the order named.

1. In the findings of fact we have set forth in some detail the advantages resulting from the installation of the sprinkler system. There is no doubt that such installation reduced competition in the vicinity in which petitioner operated and that the same was largely responsible for profits earned during the fiscal year in question. It is manifest, however, that it was not the intent of Congress to give relief, by means of special assessment, to a taxpayer solely on the ground that it earned large profits. There is no contention that the invested capital of the petitioner can not be satisfactorily determined, and it is admitted that petitioner took and has been allowed adequate depreciation during the fiscal year in question on the sprinkler system installed. The installation of the sprinkler system did not create an unusual condition affecting either income or capital and resulted in no abnormality justifying consideration for special assessment.

2. The second alleged abnormality affecting net income is that the income of the petitioner is increased for the period in question by reason of low salaries paid to its officers. We have no evidence before us as to whether the salaries paid by the petitioner were lower than those paid by representative concerns engaged in the same line of business, and the Board is not in possession of information which would enable it to determine whether the salaries paid were lower in comparison with salaries paid by similar concerns. This is not a case where all the stock was owned by members of a family, as in *Appeal of Yale Brevda Paper Box Mfg. Co.*, 2 B. T. A. 900, or where all the stock was owned by the officers of the corporation, as in *Appeal of Sol Frankel, Inc.*, 3 B. T. A. 494. In the case at bar the officers owned approximately 25 per cent of the stock of the petitioner and the salaries may have represented what the corporation determined to be adequate for services rendered. It is to be noted from the findings of fact that the president of petitioner was actively engaged in conducting the affairs of two other concerns. He devoted only a part of his time to the conduct of the affairs of the petitioner. In addition the petitioner paid wages and salaries to other than officers totaling $74,800 during the period in controversy. The secretary-treasurer, who owned 1,400 shares of stock, devoted only a part of his time to the affairs of the petitioner, and it is set forth in the findings of fact that his duties for the years in question were only supervisory and that he was also engaged in the operation and management of a plantation during the fiscal year in question. The petitioner also had a vice president,

but the record is silent as to his duties or the salary paid him during the year in question. For the several reasons given we must conclude that the petitioner's claim on this point does not represent an abnormality justifying consideration under sections 327 and 328 of the Revenue Act of 1918.

3. The petitioner alleges an abnormality in the determination of prewar income. The period from March, 1912, to the close of that calendar year can not be considered in connection with determination of prewar net income, as it is clearly eliminated as a prewar year by the express terms of section 310 of the Revenue Act of 1918, which provides as follows:

That as used in this title the term "prewar period" means the calendar years 1911, 1912, and 1913, or, if a corporation was not in existence during the whole of such period, then as many of such years during the whole of which the corporation was in existence.

See also article 771 of Regulations 45.

It will be observed that the plain words of the statute permit us to treat only the year 1913 as a prewar year in the instant case. With respect to the calendar year 1913, the petitioner claims that charges actually earned within that year were not included for the reason that the charge earned on certain cotton in storage during that year was not collected until after the close of the year and was not included in the income for the calendar year 1913 because the books of account were maintained upon a cash receipts and disbursements basis. No basis other than a cash receipts and disbursements basis was permitted for the computation of income during the year 1913, and the prewar years are calendar years by express statutory enactment. Nor, in the instant case, are we informed as to what charges earned during the calendar year 1912 are included in the income for the calendar year 1913, so that perchance the charges for 1912 paid in 1913 may have a compensating effect for charges earned in the year 1913 and paid in the year 1914, and that such compensating effect may remove any abnormality that existed in income for the year 1913. Under such a state of facts we can not assume abnormality existed for the prewar year justifying consideration for special assessment.

As set out in the findings of fact, the audit, upon which the deficiency in question is based, shows the corporation was organized in March, 1912, yet it takes one-half of the net income of 1913 to determine the allowable prewar credit. In view of the provisions of section 310, such a computation is erroneous and should be corrected to show a prewar credit in the amount of $9,670.53.

*Judgment will be entered on 15 days' notice, under Rule 50.*