DENVER POWERINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11951. Promulgated September 1, 1927.

*Frank C. Myers, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the respondent.

This is an appeal from a determination of deficiencies in income and profits taxes aggregating $18,165.69 for the years 1919, 1920, and 1921. It is alleged that the Commissioner erred in that (1) the allowance made for depreciation is insufficient, and (2) he refused to compute petitioner's excess-profits tax under sections 327 and 328 of the Revenue Acts of 1918 and 1921. The petitioner also assigns as error the alleged understatement by the Commissioner of invested capital for the taxable years, but counsel for petitioner in

his opening statement waived this error as an independent issue and relies upon it merely in support of the claim for special assessment.

At the hearing petitioner moved to strike the answer upon the ground that it was not filed within the time prescribed by the Rules of the Board. The petition was filed February 12, 1926, and the answer was filed March 30, 1926.

### FINDINGS OF FACT.

Petitioner is a Colorado corporation organized February 3, 1913, with principal office in the City of Denver and is engaged in the business of distributing gasoline and oil. During the taxable years the principal stockholders were Fred C. Cramer and wife, and the officers were Fred C. Cramer, president, a Mr. Anderson, vice president, (only two officers in 1919) Carl B. Meaus, secretary, and Harold F. Cramer, treasurer.

Prior to 1918 petitioner did not calculate depreciation on its assets. Its depreciable assets consisted of gasoline filling stations and equipment, delivery trucks and automobiles for collectors and salesmen. The method of computing depreciation employed by petitioner for the taxable years was to classify its assets and depreciate the same at a percentage based upon the estimated life of the assets, using their cost as shown by the books. The depreciation was computed upon the entire asset account and not upon the individual assets. Often items having a remaining useful life, or not fully depreciated, were replaced and the asset account was credited with the amount realized on the old item and charged with the cost of the new item. Some items theoretically fully depreciated were not so in fact. The method of computing depreciation employed by petitioner was accepted and adopted by respondent for the year 1919, the adjustments in the amount claimed by petitioner being due to elements not in dispute here. For the years 1920 and 1921 respondent, in computing depreciation, eliminated from the asset account those items which theoretically had been wholly depreciated.

At the time of incorporation and during the taxable years petitioner owned a registered trade mark known as "Powerine" and an unregistered trade mark known as "AutOKrat." "Powerine" designates a certain quality of gasoline and "AutOKrat" designates a certain quality of lubricating oil. Petitioner has spent a large sum in advertising "Powerine." These products were favorably received by the consuming public, and by reason of its high-grade products and service a valuable good will accrued to petitioner's business.

Based upon figures, as adjusted by the respondent relative to net income and allowable invested capital, petitioner realized a gross

profit on its gross sales of 17.15 per cent in 1919; 14.16 per cent in 1920; and 21.76 per cent in 1921. The percentage of net income to gross sales was 4.79 per cent in 1919; 3.12 per cent in 1920; and 4.32 per cent in 1921. Its net income was 44.83 per cent of its allowable invested capital in 1919; 39.63 per cent in 1920; and 32.55 per cent in 1921. Petitioner paid to its executive officers salaries aggregating $10,940 in 1919; $17,298 in 1920; and $15,298 in 1921. The ratio of these salaries to gross sales was 1.46 per cent in 1919; 1.73 per cent in 1920; and 2.08 per cent in 1921. The excess-profits tax as computed by respondent was 27.18 per cent of the net taxable income for 1919; 23.95 per cent for 1920; and 20.90 per cent for 1921. The capital turnover or the number of times the allowable invested capital was turned in the ordinary course of business (gross sales divided by the allowable invested capital) was 9.35 times in 1919; 12.69 times in 1920; and 7.53 times in 1921. The merchandise inventory turnover (determined by dividing the average inventory into the cost of merchandise sold) was 35.31 times in 1919; 38.91 times in 1920; and 16.56 times in 1921. The ratio of borrowed capital to invested capital was 11.89 per cent in 1919; 39.21 per cent in 1920; and 54.91 per cent in 1921. The average invested capital for the three years as determined by respondent was $85,477.42, and the average income was $32,953.50.

During the taxable years petitioner's business was mercantile in character, consisting almost entirely of buying and selling gasoline and oils at wholesale and retail, for cash and credit. The business was no more hazardous than other mercantile businesses, although the commodity dealt in was more dangerous to handle than some other commodities.

### OPINION.

VAN FOSSAN: At the hearing of this appeal, petitioner moved that the answer of respondent be stricken upon the ground that it was not filed within the time prescribed by the rules of the Board. Rule 9 as revised to November 1, 1925, in effect at the time of filing the petition and answer herein, provided, so far as material, that

After service upon him of the petition, the Commissioner shall have 60 days within which to file an answer or 20 days within which to move in respect of the petition * * *.

The petition was filed on February 12, 1926, and was served upon the Commissioner on February 19, 1926, and the answer was filed on March 30, 1926. It is apparent that the respondent filed his answer within the time allowed. The motion to strike is denied.

Two issues are submitted for our determination, viz.: (1) depreciation, and (2) special assessment. The error alleged relating to invested capital is not relied upon as an issue in this cause, but is

introduced in support of petitioner's claim for special assessment under section 328 of the 1918 and 1921 Acts.

In support of the alleged erroneous depreciation allowance made by respondent, petitioner contented itself with the testimony of two witnesses to the effect that the method of computing depreciation employed by respondent was different from that employed by petitioner and formerly accepted by respondent, together with a state-ment of the differences in the aggregate amount of the depreciation arrived at by the respective methods of computation. No evidence was submitted of the character, quantity, cost or useful life of the assets upon which the depreciation allowance is claimed nor is there any evidence of the details of the respective methods employed. Section 214(a) 8 of the Revenue Acts of 1918 and 1921 provides:

That in computing net income there shall be allowed as deductions:

   *      *      *      *      *      *      *

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

Petitioner is entitled only to a *reasonable* allowance for depreciation. This record discloses no facts which would indicate that the allowances made by respondent are not reasonable. Indeed, no facts are submitted from which we can determine what, in this case, is a reasonable allowance. The mere fact that the computation of the respondent results in a lesser allowance than that of petitioner does not prove that respondent's allowance is not *reasonable*. Petitioner has failed to prove that respondent erred in his determination of depreciation allowances.

The second issue arises from petitioner's claim for special assessment under favor of section 327(d) of the Revenue Act of 1918, which provides relief—

Where   *   *   *   the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328.

The statute continues:

This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital   *   *   *.

The above-quoted sections require that before special assessment is to be decreed there shall be proof of an abnormal condition affecting petitioner's capital or income. On the record before us, petitioner has failed to prove this fundamental fact.

Before we can find an abnormal condition in capital or income, we must know the facts with respect thereto. From the evidence we

know little or nothing of the amount of invested capital, borrowed capital, gross sales, cost of goods sold, merchandise inventory, or income of petitioner. Nor do we have similar evidence as to what petitioner alleges to constitute a normal condition.

Petitioner's evidence consisted largely of the opinions of two witnesses that certain ratios worked out by petitioner's accountant, i. e., merchandise turnover to inventory, net income to gross profit, net income to gross sales, invested capital to gross sales, and invested capital to borrowed capital, showed an abnormal condition. In the absence of a showing of unusual qualifications of the witnesses and the facts upon which their opinions are based, we can attach little weight to such opinion evidence.

Furthermore, all of these ratios might exist and yet not prove an abnormal condition under the statute. Upon analysis they are seen to be largely a restatement of the fact that this petitioner earned unusually large profits which condition the statute expressly provides shall not be a basis for special assessment. This matter is one to be best proven by the submission of facts.

Petitioner complains of the exclusion of good will from invested capital, but fails to prove either that the good will was paid in for stock or what amount, if any, was expended in its acquisition or accumulation. (See *Appeal of Watt & Shand, Inc.*, 2 B. T. A. 1273.) He contends that salaries paid executives are low but gives us no inkling of what normal salaries are. (See *Appeal of High Shoals Co.*, 3 B. T. A. 305; *Appeal of Bader Coal Co.*, 2 B. T. A. 239; *Pine Bluff Compress & Warehouse Co. Commissioner*, 5 B. T. A. 938.)

*Judgment will be entered for the respondent.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.