CRAMER & KING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12982.    Promulgated September 19, 1928.

*William Surosky, Esq.,* for the petitioner.
*J. E. Marshall, Esq.,* for the respondent.

## OPINION.

LITTLETON : The issue is whether during 1919 abnormal conditions existed of the character contemplated by section 327, Revenue Act of 1918, which would entitle the petitioner to have its tax computed under the relief provisions.

It is contended that invested capital can not be correctly determined for the reason that installation costs were almost entirely disregarded in setting up the cost of machinery and equipment which existed in its plant during the taxable year. No evidence was presented from which it could be said that installation costs, or at least a substantial portion thereof, contended for were not ascertainable, but rather the evidence is that they did not, for the most part, appear on the books as a part of the cost of capital assets. In addition to the evidence as to the nonappearance of these assets on the books, we have the testimony of witnesses to the effect that it would have cost from $100,000 to $150,000 to install the machinery and equipment which was in petitioner's plant in 1919. Not only was this testimony of the most general nature, but also it was not shown whether the witnesses were testifying as to 1919 installation costs, or installation costs when the machines were originally installed. Apparently, they were thinking of what it would have cost to install the entire plant in 1919, which would be very different from considering original installation costs. The petitioner was organized in 1901, at which

time it took over the assets of an existing partnership. In 1908 some of the machines were very old. Obviously, even if we could accept the above opinions as reflecting original installation costs, consideration would have to be given to the useful life of the various machines since much of the installation costs would not have value at the end of the life of the various machines. Certainly, where we do not know even the approximate installation costs which might properly be restored and, likewise, do not know that it is not possible to ascertain them, we are not in a position to say either that an abnormality exists on account of their exclusion or that invested capital can not be correctly determined. As we said in *Edwin M. Knowles China Co.*, 9 B. T. A. 1292:

> * * * The special relief given by sections 327 and 328 of the Act was not intended for those taxpayers whose invested capital is small in amount merely because they have not taken the trouble to establish the larger amount of which they are really entitled.

In other words, a taxpayer should be held to a reasonable diligence in determining his invested capital, and it is only after a showing of reasonable diligence and the resulting inability then to establish his invested capital that the relief provisions will be applied on this account.

Another consideration for rejecting this contention is that it is not shown what factors were taken into account in the respondent's determination. Originally, a revenue agent recommended the allowance of an invested capital of only $62,500, which was the amount of the capital stock outstanding, but in the respondent's final determination the invested capital was fixed at $262,476.08. Apparently, the difference is accounted for by the fact that the revenue agent reduced surplus on account of the failure of the petitioner to write off any depreciation prior to 1918, whereas the respondent's final determination does not adjust for depreciation prior to 1917. The assets in question were of a depreciable nature, and no depreciation was taken thereon until 1918 and 1919, when substantial amounts were taken and allowed. Whether the respondent took into consideration the failure of the petitioner to capitalize installation costs, or on the basis of some other compensating factor decided that invested capital was properly reflected without considering the exhaustion of depreciable assets, we do not know. We should not be asked to make a guess as to the basis of the respondent's determination. *Freedom Oil Works Co.*, 9 B. T. A. 823.

Some point was made of the fact that the starting point for the book figures of capital assets was not cost as of 1901, when the petitioner was organized, but an appraisal made in 1908. But it is not shown that the respondent was unable to determine invested capital on this account. Apparently, the respondent accepted the

figures reflected by petitioner's books, and we have not been shown either that they were incorrect, or that this worked to petitioner's detriment other than in so far as installation costs may have been concerned.

Little consideration can be given to the abnormality contended for on account of a secret formula which aided the petitioner in the production of income but which did not appear on its books, for the reason that no attempt was made to prove its cost or value, or to show even an approximation of the extent to which it was an income-producing factor.

The point most strongly urged by the petitioner is that the salaries paid its three officers were low in proportion to the services rendered, thereby resulting in an abnormally high income. But on a consideration of the evidence, we are not convinced that the salaries paid were so low as to abnormally affect the income. The salaries were in no sense nominal, but were substantial in amount. The amount paid for 1919 was more than twice that paid in either 1917 or 1918, and in excess of that paid in 1920. The net income shown for years other than 1919, where the lower salaries were deducted, appears to have been far from excessive based on the gross sales for those years. In fact, an acceptance of the petitioner's theory that these officers should have been paid $100,000 or more, instead of the salaries they were paid, would mean that the corporation operated at a loss for all years from 1917 to 1920, inclusive, except the year on appeal. And, too, when we compare the gross sales and net income for 1919 with the gross sales and net income for 1920, it is readily apparent that the much higher net income for 1919 over 1920, must be accounted for in some other way than on account of abnormally low salaries. What fortunate circumstance may have resulted in the large income for the year 1919 we do not know. Suffice it to say that we are not convinced that it has been shown that it was abnormally high because of a failure to pay proper salaries to the officers. And, further, as we have said, the mere fact that the tax is high because excessive profits were earned is no basis for granting special assessment.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRAMMELL, dissenting: The question for decision here is whether the petitioner comes within the scope of section 327 of the Revenue Act of 1918. The petitioner from the time of its organization in 1901 until 1908 did not keep a record of its assets and liabilities and could not determine from the records that it kept the costs of its machinery and equipment. An appraisal was made in 1909 as of 1908 for the purpose of determining the value of the machinery in its plant. This appraisal took no account of the installation costs. The evidence also discloses that subsequent to 1908 up until the taxable year

involved the petitioner did not charge to capital on its books the costs of the installation of machinery acquired and installed from time to time. Installation costs of machinery are clearly capital expenditures. It is a part of the cost of the plant and not being able to determine this installation cost, or in fact to determine the cost of the machinery itself, makes impossible a determination of the invested capital under the provisions of section 326 of the Revenue Act of 1918.

The value of the assets as of 1908 as determined by the appraisal is not a factor to be considered in determining invested capital and no cost records being available, the cost could not be determined. This, in my opinion, places the petitioner within the provisions of section 327 (a) of the Revenue Act of 1918, without reference to the question whether the inadequate compensation of its officers and the use of the secret formulas which were built up or acquired by its officer or another corporation and which the petitioner was permitted to use without cost, constituted abnormalities affecting capital within the meaning of section 327.