MUTUAL OIL CO. OF ARIZONA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11795. Promulgated December 4, 1928.

*Arthur B. Hyman, Esq.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

## OPINION.

TRAMMELL: With respect to the question of the expiration of the period of limitation presented in the first assignment of error, counsel for the petitioner in his brief contends that the statutory period for assessment and/or collection of the tax for the period of 1918 here involved had expired prior to the issuance of the respondent's notice of the deficiency, and any authority for assessing and collecting the tax must be based on the petitioner's consent to assessment after the expiration of the statutory period therefor and upon the petitioner's consent to collection after the expiration of the statutory period for collection. It is further contended that while assessment might be made under a waiver, collection can not now be made for the reason that the petitioner has not consented in writing to collection after expiration of the statutory period.

The first written consent was received in the Bureau on February 25, 1924. This extended the time for determination, assessment and collection of the amount of income and profits taxes due for the taxable period involved to August 15, 1925. Before the expiration of that period and on May 15, 1925, another written consent was filed, which extended the time for making *assessment* of the amount of income and profits taxes due for 1918 until December 31, 1925 " except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board." Before the expiration of the period agreed upon in the preceding written consent and on November 6, 1925, another written consent was entered into which extended the time for making *assessment* until December 31, 1926, with the same exception as contained in the preceding written consent and quoted above.

The notice of the deficiency here involved was mailed to the petitioner on December 12, 1925. On that date neither of the periods agreed upon in the last two written consents had expired.

With respect to the petitioner's contention that assessment of the deficiency is barred, we have heretofore considered the effect of a written consent signed during the statutory period, consenting to the assessment of a tax after the expiration of such period and con-

tinued by the subsequent filing of written consents, and have held that such consents were effective for extending the time within which assessment of the tax might be made. *Watt & Holmes Hardware Co.*, 8 B. T. A. 372; *National Piano Manufacturing Co.*, 11 B. T. A. 46. Our decisions in those cases are applicable and controlling here and the consents given by the petitioner served to continue in force the time within which assessment can be made.

With respect to the contention that while assessment might be made under the written consent, collection can not now be made because the petitioner did not consent to collection after the expiration of the statutory period, it appears that the written consent received in the Bureau on February 25, 1924, in addition to providing an extension of time for assessment of tax for 1918, also specifically provided for an extension of time for collection. The written consents signed in May and November, 1925, did not contain any provision relating to the collection of the deficiency after assessment. In *Sunshine Cloak & Suit Co.*, 10 B. T. A. 971, where the facts were very similar to those presented here, we considered the effect of renewal consent agreements which did not contain any provision with respect to collection after assessment. We there said:

* * * At the time of execution of those consent agreements, however, the Revenue Act of 1924 had been enacted, under the provisions of which the time for collection was extended for six years after the assessment of the tax. Since the statute had made provision for the collection of the tax after assessment, it was not necessary to have the time for collection extended by agreement. * * *

Both parties to the written consents are presumed to have had a knowledge of the law as to the effect of their consent on collection of the tax after the statutory period had expired. If the tax were assessed pursuant to the written consent, the respondent, by specific statutory authority, had six years thereafter to collect the tax.

The consents in writing dated January 19, 1925, and March 3, 1926, made no reference to the time of collection but the statute supplied that omission. The statute extends the time for the collection of the tax six years after assessment, if the assessment is made within the statutory period prescribed in section 277, or as extended in section 278.

Our holding in that case is applicable to the contention raised by the petitioner. Since the written consents have been effective for extending the time within which the assessment can be made, and as the respondent has 6 years within which to make collection after assessment of the tax, the period for collection has not expired.

With respect to the assignment of error relating to the reduction of the petitioner's invested capital by the respondent on account of additional taxes assessed for periods prior to March 1, 1918, no evidence directed to this issue was submitted, nor is any reference made thereto in the brief of counsel for the petitioner. We therefore

conclude that the assignment of error was abandoned by the petitioner and consequently decide the issue in favor of the respondent.

The remaining matter in controversy is the correctness of the respondent's action in refusing to determine the petitioner's tax liability in accordance with the provisions of sections 327 and 328 of the Revenue Act of 1918. Since the trial was limited to the question of whether there existed such abnormalities in capital or income as bring the petitioner within the purview of section 327, our consideration of the issue will be limited to this question.

The petitioner relies on four grounds in support of its contention that there existed such abnormalities in income or capital as entitle it to have its tax computed under section 328. The first of these is that officers' salaries were only nominal. The petitioner did not, however, submit any evidence directed to the reasonable value of the services rendered by the officers during the period involved, or whether the salaries paid the officers were materially inadequate for the services rendered. While the evidence shows that Williams' salary in 1919 was increased more than twice what it was during the period here being considered, we are unable to determine to what extent this was the result of his responsibilities and duties being proportionately increased, along with a corresponding increase in the volume of business in the subsequent year. From the facts before us, we are unable to hold that the salaries paid by the petitioner to its officers resulted in an abnormality in income. *Bailey Dental Co. of Iowa*, 11 B. T. A. 860.

Another ground relied upon by the petitioner as entitling it to the benefits of the relief provisions of the Act is its contract with the Northwestern Oil Refining Co. whereby it was enabled to purchase gasoline and kerosene at prices of about 2 cents and 1 cent, respectively, per gallon under the prevailing market prices and as a result of which its earnings were about $50,000 greater than if purchases had been made in the open market. The contract discloses, however, that the petitioner agreed to take the entire output of the refinery. The advantageous price appears to have been due to the wholesale or output purchase. A purchaser buying in a large quantity can as a rule obtain a better price than one who purchases in small quantities. From all the record discloses this arrangement might have been the usual or normal basis of selling the entire output of a refinery for quantity purchases as distinguished from purchases in smaller lots from time to time. In *Wisconsin Butter & Cheese Co.*, 10 B. T. A. 852, we held that where a taxpayer is able to market its products less expensively through an organization of its own than through brokers and consequently markets its products through its own organization, the saving resulting therefrom does not create an abnormality of income.

In our opinion a saving resulting from the manner in which goods in this case are purchased does not create such an abnormality as is contemplated in section 327.

The third ground relied upon by the petitioner as constituting an abnormality is that it was enabled to transact the volume of business transacted on the amount of the invested capital it had because of borrowed capital of an amount of $400,000 used in the business. While the record does not show the amount of the petitioner's invested capital for the period here involved, the amount for the 12 months ended February 28, 1919, was $715,158.33. In the absence of any evidence that the amount of borrowed capital used by the petitioner was unusual or abnormal in the business of selling and distributing gasoline, kerosene, and other products of similar character, there is nothing upon which we may base an opinion that the use of borrowed money created an abnormality. *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566.

Another ground relied upon by the petitioner as constituting an abnormality is that its " income began to show a splendid development shortly after its inception, when in 1912 it reached an income of $48,000 and due to distressing business conditions throughout the country, received a tremendous set-back in the following year," and that when " these conditions were obviated, it immediately bounded ahead, showing a net income for 1916 of $104,164.57 and for 1917, $187,314.04." The petitioner contends that because there was not an increase in income for 1913 an abnormality was created. In our opinion the fact that the petitioner's income for 1913, due to a general business depression in that year, failed to show an increase or was less than in the preceding year or in subsequent years does not constitute an abnormality within the provisions of the statute.

From a consideration of all the evidence in this case in connection with the various contentions raised by the petitioner, we are of the opinion that during the period here involved there did not exist any abnormalities in income or capital which would entitle the petitioner to have its profits-tax liability computed under the provisions of section 328 of the Revenue Act of 1918.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*