UNION DRAWN STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11103, 11104. Promulgated March 11, 1929.

*H. Kennedy McCook, Esq.*, for the petitioner.
*John A. McCann, Esq.*, and *A. H. Fast, Esq.*, for the respondent.

## OPINION.

MURDOCK: The respondent in his answer raises the point that the letter of November 24, 1925, is not a deficiency notice within the meaning of section 274 (a) of the Revenue Act of 1924 and asserts that the Board is without jurisdiction by reason of that fact. We are of the opinion that the letter of November 24, 1925, constituted a final determination of a deficiency, from which an appeal could be taken to this Board. *Joseph Garneau Co.*, 1 B. T. A. 75; *Terminal Wine Co.*, 1 B. T. A. 697; *Florence M. Smith, Executrix*, 5 B. T. A. 225; *Mutual Building & Investment Co.*, 11 B. T. A. 999.

The sole issue on the merits for determination in this proceeding is whether or not the petitioner has the right to have its excess-profits taxes for the years 1917 and 1918 computed in accordance with the provisions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918.

The petitioner contends, first, that its invested capital can not be determined and, second, that certain abnormal conditions existed during the taxable years in question, both in invested capital and in

income. The conditions which the petitioner contends render it impossible to determine the invested capital, or which are abnormal, are: First, the acquisition of water rights for power purposes which rights were never valued upon the books of the corporation and by the use of which a saving was effected; second, the reduction in the year 1916 in the patent account by the sum of $51,000; third, the development over a period of years of certain secret processes embodied in various machines which were used by the petitioner in the manufacture of its products and which effected a substantial saving for each of the years involved in this appeal.

The water rights were evidenced by shares of stock. Shares of stock are to be regarded as tangible property for invested capital purposes under both revenue acts applicable to this case. We need not discuss whether or not these shares are inadmissible. In the deed of conveyance from the trustees of the Harmony Society for the factory site there was particular reference to the water power, it being stated that 30 shares of water power (stock), each share being equal to 1/200 part of all the water power furnished by the Beaver Falls Water Power Co., were included in the conveyance. There is, however, no evidence to show that stock of the petitioner was issued therefor. On the contrary the evidence shows that such water-power shares were acquired without any consideration other than the location of the factory at Beaver Falls. The Revenue Act of 1917, section 207, defining invested capital, provides that it shall include actual cash paid in, actual cash value of tangible property paid in other than cash for stock or shares, paid-in or earned surplus and undivided profits used or employed in the business. It will be observed that tangible property must either have been paid in for stock or shares or come within the category of paid-in or earned surplus. Not having been transferred for shares of the petitioner, the water power shares can not be included in invested capital unless they can be regarded as paid-in surplus. We are satisfied that they can not be so regarded. *Frank Holton & Co.*, 10 B. T. A. 1317, and authorities there cited. It is apparent, therefore, that the water rights in question do not constitute such assets as may be included in invested capital, and as a consequence any impossibility of determining their value can not contribute to or give rise to a condition under which invested capital can not be determined.

The petitioner calls attention to the write-off from patent account in the year 1916. This write-off consisted of $51,000 and diminished the patents to the sum of $10,000. The petitioner's treasurer testified that the patents were written down because the company was ultraconservative in its methods of bookkeeping and the directors

could not see the use of a patent account other than a nominal amount merely to show that patents were held. Some of the patents had expired at the time the patent account was written down. The petitioner has not shown us what took place on the organization of the company in regard to the patents. We do not know whether it was the original patentee or whether it acquired such patents from others. We are unable to find that the patents were paid in for stock or shares. Nor do we know the dates of the patents or whether the petitioner acquired such patents at or after its organization by payment for them in cash or tangible property. We are therefore unable to say whether any amount should be included in invested capital by reason of the value of such patents under the Revenue Act of 1917. The same observation applies to the taxable year 1918 under the provisions of section 326 (a) (4). Under these circumstances we can not say that the write-down in the account would form a basis for special assessment.

The petitioner next calls attention to certain secret processes embodied in machines built and developed in its plant by its employees. Only one of the ideas embodied in such machines was patented and that one in 1889 at the time of the corporation's organization. All of the development expense in connection with these secret processes and machines was charged to expense in the years in which such expenses were incurred, no portion of it being capitalized. It is the contention of the petitioner that the amounts expended in developing the secret processes and the design, construction and erection of machinery by which such processes were perfected are capital expenditures. These processes were not acquired upon the organization of the petitioner but were built up over a series of years in the course of its operations. The petitioner would be entitled to include in its invested capital its expenditures made in perfecting its secret processes and the machines embodying such processes upon a showing of the amounts so expended. *Goodell-Pratt Co.*, 3 B. T. A. 30. It contends that to determine the cost of building up the processes is impossible. We are not convinced, however, that it is impossible to determine this cost. There has been no showing that any attempt has ever been made to go back over the books and charge this cost to capital or to determine whether the amounts could be identified. So far as we know the amounts were capable of accurate determination. This case falls within the principles laid down in the case of *Edwin M. Knowles China Co.*, 9 B. T. A. 1292, in which we said that the special relief given by the statute was not intended for those taxpayers whose invested capital is small merely because they have not taken the trouble to

establish the larger amount to which they might be entitled. See also *Cramer & King*, 13 B. T. A. 399.

We next come to a consideration of the question whether there exists one or more abnormal conditions affecting the capital or income of the corporation, such as to entitle the petitioner to special assessment. The water rights as we have heretofore pointed out are not such assets as might be taken into account in computing invested capital. Their exclusion under the statute from invested capital does not give rise to an abnormal condition affecting invested capital, that is, mere statutory exclusion without a showing of some other condition is not an abnormal condition within the meaning of this section. *Morris & Co.*, 1 B. T. A. 704. See also *William B. Dana Co.*, 11 B. T. A. 92; *J. H. Guild Co.*, 11 B. T. A. 914, 920; *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192. It may be that an asset might be excluded from invested capital and by reason of peculiar circumstances connected with such asset an abnormal condition might exist but we see no such circumstances here.

Our previous discussion in regard to the secret processes sufficiently disposed of this question for all purposes of the case, for without a showing that the failure to have the cost of these processes included in invested capital was not due to the petitioner's own indifference and lack of industry in the preparation of the case, we need not concern ourselves with whether or not there was an abnormal condition affecting capital or income in this same connection. *Edwin M. Knowles China Co., supra.* However, we will discuss briefly the petitioner's testimony that these secret processes effected considerable savings in its business, which testimony was offered for the purpose of showing an abnormality. The petitioner's operating manager testified that in his opinion these secret processes effected certain savings per annum and he stated what in his opinion these savings amounted to. However, there are not facts before us from which we could test his opinion and counsel was frank enough to admit that the opinion of the witness was little better than a guess. Another witness gave his opinion as to the cost of these processes. These figures were also admittedly mere estimates. We are not sufficiently convinced of the correctness of the figures to make a definite finding of fact in regard to them. Thus, it does not appear that the effect of the secret processes is so substantial as to create an abnormal condition affecting capital or income. See *C. Bruno & Sons, Inc.*, 14 B. T. A. 103.

*Judgment will be entered for the respondent.*