*279 OPINION.
Muedock:
The petitioner contends that it is entitled to have its excess-profits taxes for che year 1920 determined as provided in section 328 of the Itevenue Act of 1918, due to the existence of certain alleged abnormalities which bring it within section 327(d) of the same act. It was alleged in the petition that the error relating to special assessment was committed for both the years 1919 and 1920, but at the hearing and in its brief the petitioner mentions only the *280 year 1920, and no proof was offered in regard to the year 1919. Section 327(d) provides that the tax shall be determined as provided in section 328:
Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal condition affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed b^ reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of-profit upon a normal invested capital, nor (2) in which 50 per centum or more,of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 191S, both dates inclusive.
The petitioner first contends that no amount representing the Dreyfuss silvering process, the cutting machines, or the beveling and polishing machines used in 1920 was included in -invested capital for that year, and the exclusion results in an abnormality within the meaning of the above quoted provision.
The total cost of all machines used in 1920 represented a capital expenditure, which, after proper deductions for depreciation and obsolescence, would represent an asset of the company in 1920. The secretary of the jietitioner testified as to the approximate cost of the various machines in use in 1920, but there was no proof of the time at which the machines were put in use or of their probable useful life. Due to insufficient proof, we can not make a proper adjustment to invested capital to reflect the depreciated cost of these machines. Instead of proving these facts, the petitioner asks this Board to hold that an abnormality results from the fact that the. cost of the machines was not capitalized and they were very valuable. Where it appears, as here, that the taxpayer has neglected to get the benefit of all of the invested capital to which it is entitled, we will not order special assessment. Edwin M. Knowles China Co., 9 B. T. A. 1292; Cramer & King, 13 B. T. A. 399, affd., 41 Fed. (2d) 24; Union Drawn Steel Co., 15 B. T. A. 761. Until we know the amount of invested capital to which a taxpayer is .entitled, it is difficult to determine that there is any abnormal condition affecting its capital or income. Cf. Pine Bluff Compress & Warehouse Co., 5 B. T. A. 938; Max Zeigler & Bros., 12 B. T. A. 838. There, is no evidence to show that other companies were not equipped with similar beveling and polishing machines, and there is no evidence to show that either the cutting or the beveling and polishing machines, effected a saving or had a value in excess of the amount at which they should be re- *281 fleeted in invested capital. Without some such showing, we would never get to the question of an abnormality. Cf. Enameled, Metals Co., 14 B. T. A. 1392; Cohn Goldwater Co., 15 B. T. A. 970.
The petitioner did not own the Dreyfuss process in 1920, but in that year paid royalties to Dreyfuss for the use of it. As near as can be determined from the figures, it appears that the petitioner in 1920 paid Dreyfuss, in royalties, an amount equal to or greater than the estimated savings effected by the use of his process for the year. In other words, the petitioner paid for just about what it got from the use of the Dreyfuss process in 1920. We see no abnormality in this.
It was stipulated that the petitioner used borrowed capital in the amount of $108,095.41 in the conduct of its business, and the amount of salaries paid to its officers was also stipulated. But what is there to show whether this was a large or small amount of borrowed capital to be used by companies engaged like the petitioner in a business of this kind, or whether the salaries were high or low for.such business? See Higginbotham-Bailey-Logan Co., 8 B. T. A. 566; Mutual Oil Co. of Arizona, 14 B. T. A. 538; Wisconsin Butter & Cheese Co., 10 B. T. A. 852; Bay Poplar Lumber Co., 12 B. T. A. 1367; Cramer & King, supra Freedom Oil Works Co., 9 B. T. A. 823; Kossar & Co., 36 B. T. A. 952; Green, Matthews, Taylor Co., 19 B. T. A. 359.
The petitioner has also alleged an error relating to the value of its good will. Apparently, the Commissioner has allowed a value for good will of $52,697 in the computation of invested capital. We have not been told how he arrived at this figure. We do not know whether or not good will was paid in for stock or what amount, if any, was expended for the acquisition or accumulation of good will. Consequently, we are unable to determine the amount at which good will should be reflected in the computation of invested capital. If the petitioner had good will of a value in excess of $52,697, perhaps it could, by proper proof, have established that its invested capital should be increased, and if it failed to produce proper proof, special assessment should not be granted. Edwin M. Knowles China Co., supra. Furthermore, we do not know what was the value of the petitioner’s good will in 1920. The amount of the profit or loss of the company for each of the years 1909 to 1916, inclusive, was stipulated, and the parties also agreed that certain figures appear on the books of the company as representing the net tangible assets of the company on January 1 for each of the years 1909 to 1916, inclusive. But without more, and we have no more, we are unable to determine, compute, or even guess at the value of the petitioner’s good will for the year 1920. Cf. Morris & Co., 1 B. T. A. 704; Denver Powerine Co., 7 B. T. A. 1186.
*282 The petitioner also made an allegation relating to a contract under which it was operating as a basis for special assessment, but it introduced no evidence in support of the allegation. The petition also contained an allegation relating to a loss resulting from the abandonment of its plant in Charleroi, Belgium, at the beginning of the World War. The question of the petitioner’s right to a deduction for this loss was decided when this case was originally presented to this Board. See Semon Bache & Co., 15 B. T. A. 183. There is nothing in the evidence to show that this loss brought about an abnormal condition affecting capital or income to the corporation within the meaning of section 827. There is an allegation that a pan of this loss could not be capitalized due to a faulty method of accounting. But no proof was offered to support this allegation.
Thus, we are of the opinion that no one of the conditions urged by the petitioner constituted an abnormal condition affecting the capital or income of the corporation within the meaning of section 327. Furthermore, we. are of the opinion that these conditions considered as a whole did not constitute an abnormal condition within the meaning of this section.

Judgment will be entered for the resfondent.