COHN GOLDWATER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8213.   Promulgated March 20, 1929.

*John C. Ristine, Esq.*, and *F. O. Graves, Esq.*, for the petitioner.
*Alva C. Baird, Esq.*, for the respondent.

972

ARUNDELL: Petitioner claims that its profits taxes for 1919 should be computed under section 328 of the Revenue Act of 1918 for the reasons (1) that the Commissioner is unable to determine invested

capital under section 326 and (2) that owing to abnormal conditions affecting its capital and income the tax as determined by the Commissioner works an exceptional hardship upon petitioner as evidenced by a comparison with tax rates of representative corporations.

1. The first of the cases specified in the statute for the application of the special assessment provisions are those " where the Commissioner is unable to determine the invested capital as provided in section 326." (Section 327 (a)). The basis for petitioner's claim under this provision is that in the taxable year it had valuable good will and trade-marks or trade brands which should be included in invested capital, but because of the lack of records the amounts spent in building up these intangibles can not be ascertained; hence its invested capital can not be satisfactorily determined.

The amount of $200,000 set up on the books of the partnership in December, 1917, for intangibles represents the estimated amount of sales and advertising expenses up to March 1, 1913. Inasmuch as the expenditures for sales promotion and advertising were treated as expenses, the petitioner under section 331 of the Revenue Act of 1918 would not in any event be entitled to include in invested capital any greater amount than the cost to the predecessor at March 1, 1913. The amount set up on the books is admittedly an approximation. It does not establish cost.

As a predicate for the application of section 327 (a) it must be shown that there exists some item which should be included in invested capital. There apparently is no dispute in this case as to the tangibles and the figures at which they were included. The question then is whether there existed any valuable good will or trade brands or trade-marks which should be reflected in petitioner's invested capital. To establish the existence of these intangibles petitioner offered testimony of two witnesses. One was an officer of a competitor firm. He was permitted to express an opinion as to the value of petitioner's good will, but it was developed on cross-examination that the opinion was given without any knowledge of facts essential to support it. He did not know the amount of capital invested, the volume of sales, the number of salesmen employed, or any of the expenses of petitioner. As far as the record shows, he did not know whether the petitioner earned profits or sustained losses. We can not give any weight to the testimony of this witness. The other witness was an officer of the petitioner company. In his case again we are faced with the lack of essential facts by which the soundness of his opinion can be tested. As stated above, the amount of $200,000 entered on the partnership books was an approximation, but even if we take it that that amount was actually expended, it does not necessarily follow that intangibles of equivalent value resulted. This witness did not furnish us with any data as to whether the corporation or its

predecessor earned profits or sustained losses in any year. Nor does the record anywhere give this information. Nothing is presented from which we can determine whether or not the promotion schemes for which expenditures were made were successful or whether or not they resulted in increased sales or any wider distribution of products. We know nothing whatever as to the business policies of petitioner and its predecessor, or as to their reputation in the trade. On the record it is impossible for us to say that either the petitioner or its predecessor had any intangibles for which a value should be allowed in computing invested capital.

The evidence in this case is insufficient to permit of an application of the principle followed in *Northwestern Yeast Co.*, 5 B. T. A. 232, upon which petitioner relies. There we had evidence of amounts spent for advertising, samples, agents, and other forms of promotion, of the amount of sales and income which, but for comparatively slight fluctuations, increased from year to year. Here we have no evidence as to any of these items; we are not even furnished with the aggregate of the expenditures; we do not know whether sales and income increased or decreased as a result of the alleged expenditures.

The failure of petitioner to produce essential facts on the question involved brings it within the principle announced in *Cramer & King*, 13 B. T. A. 399, where we said:

A taxpayer should be held to a reasonable diligence in determining his invested capital, and it is only after a showing of reasonable diligence and the resulting inability then to establish his invested capital that the relief provisions will be applied on this account.

See also *Edwin M. Knowles China Co.*, 9 B. T. A. 1292.

The claim that there were abnormalities affecting capital and income is based on the existence of valuable good will, trade-marks, land, and buildings, which by reason of the time and manner of petitioner's organization could not be included in invested capital. We have set forth above that it has not been established that the good will and trade-marks were valuable. As to the land and buildings, petitioner says, and establishes, that they had a value of over $600,000, but by reason of the technical provisions of section 331 only a value of $208,000 has been allowed for invested capital purposes. We have recognized that the statutory exclusion of assets may result in an abnormality, but such is not the result in every case of such exclusion. The view we have taken of this proposition is stated in *Enameled Metals Co.*, 14 B. T. A. 1392, as follows:

Where the item excluded has been the principal income-producing factor and primarily responsible for the production of the income of the taxpayer, we have not hesitated to say that an abnormal situation existed. *Clarence Whitman & Sons*, 11 B. T. A. 1192. But it does not follow that every time an asset is excluded from invested capital there results an abnormalty within the meaning of section 327 of the Act. *Morris & Co.*, 1 B. T. A. 704. In many

businesses there will be some good will, or some appreciation in the value of the assets, or some other factor which can not enter into the computation of invested capital. The exclusion must be such as to cause exceptional hardship.

The petitioner here has not brought itself within the rule in the *Whitman* case, for it is not shown to what extent the excluded assets contributed to income. Cf. *Union Drawn Steel Co.*, 15 B. T. A. 761.

To what extent borrowed capital contributed to income is not disclosed by the evidence. The mere showing that money was borrowed is no evidence of any abnormality.

The evidence fails to disclose any abnormality within the meaning of section 327 (d) and in our opinion the petitioner is not entitled to have its profits taxes computed under section 328 of the Revenue Act of 1918.

*Judgment will be entered for the respondent.*