814

WRIGHT LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11901.   Promulgated October 9, 1929.

A. S. Lisenby, Esq., for the petitioner.
Eugene Meacham, Esq., for the respondent.

**816**

OPINION.

PHILLIPS: The points upon which the petitioner relies are summarized in the brief of its counsel as follows:

The petitioner is entitled to the assessment of its 1920 excess profits tax under section 328 of the Revenue Act of 1918, because the 1920 excess profits tax determined without benefit of section 327 of the same act would, owing to abnormal conditions affecting the capital of the petitioner, work upon it an exceptional hardship evidenced by gross disproportion between its tax and the tax of representative corporations.

·The capital employed by the petitioner during the calendar year 1920 was in a large part borrowed, which constituted an abnormal condition affecting its capital within the meaning of section 327 (d) of the Revenue Act of 1918.

In any event, the fact that the use and employment of other capital several times greater than its statutory invested capital was a material income-producing factor in the petitioner's business constituted an abnormal condition affecting the petitioner's capital within the meaning of section 327 (d) of the Revenue Act of 1918.

The argument urged in support of this position is that an abnormal condition affecting capital exists where a large part of the

capital used in the business is borrowed; that the real estate used in the business was borrowed capital and was three times the amount of the invested capital.

Considering the history of the enactment of sections 327 and 328 of the Revenue Act, the rulings of the Commissioner of Internal Revenue and the decisions of the courts and the Board, there can be no reasonable doubt that an abnormal situation affecting capital may arise where there is a gross disproportion between invested capital and borrowed capital. Whether an abnormal situation exists in the capital structure must be determined from the peculiar circumstances in each case; no rule of general application may be laid down. In the present case we are not called upon to determine whether a capital structure, three-fourths borrowed and one-fourth invested, is or is not abnormal in the retail lumber business in New York, for we are clearly of the opinion that the value of leased property is no part of the capital of the lessee.

When one borrows money, there is the obligation to repay a like amount. The borrowed money, however, becomes the property of the borrower. Ordinarily he may use it as he choses. It is part of his capital. The lender assumes the risk of securing repayment in the future. He no longer has any claim upon the funds loaned; his position is that of a creditor and no longer that of an owner. If the borrower uses the money in his business, it is as much a part of his capital as money which he may have furnished from other funds; it is all subject to the risks of the business, although there may be various priorities among different creditors. But the position of a lessor and lessee are wholly different. The lessor grants only the right to use the property for a limited time, always retaining the title as his own. He risks no part of the value of the fee. At most he risks nonpayment of the stipulated rental. The value of the fee of the rented property is never at the disposal of the lessee and is never any part of his capital. The only asset he acquires is the lease. Other distinctions exist between borrowed capital and property used under a lease, but enough have already been pointed out to indicate the reasons for our opinion that the value of the property occupied by petitioner under a lease can not be considered as a part of the petitioner's capital, borrowed or otherwise.

There is testimony in the record that the rental paid for the leased premises was low. While it was less than 4 per cent of the market value of the property, the testimony is that at that time property in this section of New York City had been more or less stagnant and was just beginning to " boom "; that there were a considerable number of small buildings occupied for business purposes on the ground floor and residence purposes above. In the words of the witness,

" they were erected to get any income from the property they could."
The situation is one which frequently occurs where property has a
value for future use but little present earning capacity. There is
nothing to indicate that the rent paid was such as to create any ab-
normal condition.

The record leaves no doubt that the petitioner was so situated that
it obtained much profitable business which would not have come to it
in a location less central to the theatres, hotels and other places of
business. In several respects it was unique. It earned almost 100
per cent upon its invested capital. But none of these are grounds
for computing its tax under section 328 of the Revenue Act. Section
217, Revenue Act of 1918; *Enameled Metals Co.*, 14 B. T. A. 1392;
*Moses-Rosenthal Co.*, 17 B. T. A. 622.

*Decision will be entered for the respondent.*