CLARK BROWN GRAIN CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11610, 12854. Promulgated January 29, 1930.

*A. F. Schaetzle, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, for the respondent.

938

OPINION.

LANSDON: Since the request for relief under section 328 of the Revenue Act of 1918 applies to each of the taxable years under review, we first consider and decide the petitioner's second allegation of error which relates only to the deficiency asserted for the fiscal period beginning November 1, 1917, and ending June 30, 1918. That question reduced to its simplest form is whether the return which the petitioner filed for the period in controversy, and which the Commissioner accepted and used as a basis for the computation and assessment of tax liability, was the return required by law. This question in turn depends on whether, on the agreed facts as set forth above, the Commissioner approved the computation of the petitioner's net income on the basis of an accounting period ending June 30. If the new basis for computing income was without the approval of the Commissioner it follows that all returns should have been made for fiscal periods and years ending October 31 and that any statutory net loss sustained in the fiscal year ended October 31, 1919, should be applied to reduce the petitioner's income and tax

liability for the fiscal year ended October 31, 1918, under the provisions of section 204 (b) of the Revenue Act of 1918.

The parties agree that from the date of its organization until October 31, 1917, the petitioner made its Federal income-tax returns on the basis of a fiscal year ending October 31. It is also stipulated that from June 30, 1917, the petitioner kept and closed its books on the basis of a fiscal year ending on June 30; that, after October 31, 1917, it made its Federal income-tax returns on the same basis; and that the Commissioner accepted such returns and computed and assessed the taxes due thereon. It is obvious, therefore, that the petitioner's return as of June 30, 1918, covered only the eight months from November 1, 1917, until that date, and that the real issues here are whether the return for such fiscal period was legally made.

The statutory provision which we must construe in the decision of the issue presented here is section 212(b) of the Revenue Act of 1918 made applicable to corporations by section 232 of the same act, and is as follows:

The net income shall be computed upon the basis. of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period, subject to the provisions of section 226.

That part of section 226 referred to above is as follows:

That if a taxpayer, with the approval of the Commissioner, changes the basis of computing net income * * * from one fiscal year to another fiscal year a separate return shall be made for the period between the close of the former fiscal year and the date designated as the close of the new fiscal year.

It will be noted that where a taxpayer changes the basis of its accounting period from one fiscal year to another the law requires that with the approval of the Commissioner net income shall be computed on the basis of such new accounting period. In the instant proceeding we think it is clear that the petitioner established a new accounting period at June 30, 1917, but made its income-tax return for 1917 on the basis of the old period ended October 31 of that year. It was required to make its tax returns on the basis of its regular accounting period and after June 30, 1917, such period

was a fiscal year ending June 30. It is as to the return for this period that the Commissioner has denied an abatement of tax assessed thereunder and that the petitioner asserts was not legally made since the computation of the tax liability on the basis of the new accounting period had not been approved by the Commissioner prior to the filing thereof.

The date at which the return in controversy was filed is not disclosed by the record, but, as it was accepted by the Commissioner, we must presume that it was timely for the purposes for which it was made. We regard such return as ample notice that the petitioner had changed its accounting period and proposed, subject to the approval of the Commissioner, to compute and report its net income on the new basis in conformity with the law. Thereafter the only requirement for the validation of that computation and return was the approval of the Commissioner.

Counsel for the petitioner argues that on the stipulated facts the regulations required the petitioner to ask and receive the Commissioner's permission to change its basis of accounting from one fiscal year to another. It is agreed that such permission was not asked or granted but, in our opinion, no such condition is imposed either by statute or administrative regulations. The statute provides that if such a change is made net income, with the approval of the Commissioner, must be computed on the new basis and this is plainly in conformity with the statutory requirement that taxpayers must report income for taxation on the basis on which their accounts are regularly kept. The regulations go no further than to say that the Commissioner will not approve such a change except on notice at least 30 days before the due date of the return for the existing taxable year and at least 30 days before the due date of the taxpayer's separate return for the period between the close of the existing taxable year and the date designated as the close of the proposed taxable year. In this situation the single duty of the Commissioner is to approve or disapprove the computation of net income on the new basis and the conditions precedent to such approval, if any, is in the regulation requiring notice of such proposed change.

The return for the fiscal period ended June 30, 1918, advised the Commissioner that the petitioner had changed its accounting period from one fiscal year to another. It was filed within the time in which a return for the new period was due and well in advance of the date at which a return on the basis of the old fiscal year would be due in the event of the Commissioner's disapproval of the computation of net income on the new basis. In these circumstances we are of the opinion that the timely filing of the petitioner's return with income computed on the basis of its then established accounting year should

be regarded as sufficient notice of an accomplished change of accounting period and of intention and desire to observe the law and thereafter compute and report net income on this basis. The acceptance of the return in question and of subsequent returns with income computed on the basis of a fiscal year ended June 30 indicates that the Commissioner so regarded it or that he waived the notice required by his regulations.

In the light of the evidence, the law and the regulations of the Commissioner, we think it is clear that during the time involved herein the petitioner kept its accounts on the basis of a fiscal year ending on June 30 and that, with the approval of the Commissioner, it computed and reported its income on such basis. In our opinion the return filed for the fiscal period beginning November 1, 1917, and ending June 30, 1918, was the return required by law. *Norwich Woolen Mills Corporation*, 18 B. T. A. 303; *United States ex rel. Greylock Mills* v. *Blair*, 293 Fed. 846. The fiscal year ending on June 30, 1919, therefore, began prior to October 31, 1918, and is outside the time limit fixed by section 204 of the Revenue Act of 1918 for net loss purposes. *Ennis-Brown Co.*, 10 B. T. A. 1248.

As an alternative to the issue above considered the petitioner argues, but does not plead, that on the record it is not clear that it had any established accounting period at any time in its history and, therefore, under the law, its return should be made and its tax liability computed on a calendar year basis. In view of the stipulations of the parties, we see no merit in this contention.

The petitioner's first allegation of error is that the Commissioner erroneously refused to apply the relief provisions of sections 327 and 328 to the computation of its tax liability for each of the years in controversy. The record includes no evidence of such refusal but, even if application for relief were denied, we are of the opinion that there were no abnormal conditions in income or invested capital in either of the taxable years sufficient to entitle the petitioner to special assessment. The only fact urged in support of such claim is that in each of the years under review the petitioner used large amounts of borrowed capital.

The record shows that for the fiscal period of eight months ending June 30, 1918, the petitioner's invested capital was $97,907.23 and that its daily balances of borrowed capital for the same period averaged $55,330.57. In the same period its gross turnover was $954,233.82, and the net profit after all allowable deductions, $22,-643.30. In the fiscal year ending June 30, 1920, invested capital in the amount of $133,268.20 was used and the daily balances of borrowed capital averaged $289,250.68. We have many times held that the use of borrowed capital alone is not evidence of abnormality within the meaning of section 327 of the Revenue Act of 1918. In

*Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, we said: " In the absence of any evidence that it [borrowed capital] is abnormal in the wholesale dry goods business, there is nothing on which we may base an opinion of normality or abnormality." In *C. A. Dahl Co.*, 10 B. T. A. 915, we said: " The mere fact that a taxpayer has the use of borrowed capital is not in itself sufficient evidence of abnormality unless the fact that it creates an abnormal condition is clearly set forth in the evidence." Substantially to the same effect are our decisions in *Iron City Electric Co.*, 13 B. T. A. 286; *Standard Rice Co.*, 13 B. T. A. 338; *C. Bruno & Sons, Inc.*, 14 B. T. A. 103; *Mutual Oil Co. of Arizona*, 14 B. T. A. 538; *Troy Motor Sales Co.*, 14 B. T. A. 546.

Careful consideration of the decisions above cited and of many others of similar purport indicates that we have consistently held that the alleged abnormality must apply to the business of the taxpayer and create a hardship as compared with other concerns similarly situated. The petitioner was engaged in the business of buying, selling, and storing grain. The stipulation shows that many of the petitioner's bills payable ran for very short terms ranging from 1 day to 10 days. This can mean only that, like every other concern in the same or a similar business, it was sight drafting against its consignments or borrowing on stored grain and pledging its bills of lading or warehouse receipts as collateral. This procedure enables grain buyers to transact a large business on a relatively small invested capital. There is nothing in the record to indicate that the petitioner's methods of doing business were in any way different from the practices of other concerns similarly operating. The situation here as to borrowed capital seems to be entirely normal for the grain business but, in any event, the petitioner has not proved that it is abnormal.

In support of its claim for special assessment the petitioner relies on, and cites, our decision in *G. M. Standifer Construction Corporation*, 4 B. T. A. 525. It is true that special assessment was allowed in that case on the basis of an abnormality of invested capital resulting from the use of large amounts of borrowed capital. In our opinion therein we expressly said: " [Abnormality] is a fact that must be determined in each case." The evidence in that proceeding proved abnormality in the business conducted by that taxpayer. The evidence in this case wholly fails to prove that any abnormality resulted from the use of borrowed capital in the business of buying, storing, and selling grain.

Reviewed by the Board.

*Decision will be entered for the respondent.*