EVERETT LOGGING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15728. Promulgated May 26, 1930.

*Paul E. Shorb, Esq., M. P. Wormhoudt, Esq., Edgar T. Eveleigh, Esq.,* and *George V. Whittle, C. P. A.,* for the petitioner.

*F. R. Shearer, Esq.,* and *John R. Wheeler, Esq.,* for the respondent.

## OPINION.

SMITH: On motion of the respondent, and by stipulation entered into between the parties, the hearing of this proceeding was limited to a single issue, namely, the right of the petitioner to special assessment under the provisions of sections 327(a) and 327(d) of the Revenue Acts of 1918 and 1921, which read as follows:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

\*      \*      \*      \*      \*      \*      \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

It was further stipulated that in the absence of special assessment there are deficiencies in petitioner's taxes for the years 1920 and 1921 amounting to $5,406.86 and $3,603.46, respectively.

The petitioner contends that abnormalities in invested capital and in income, as contemplated by the Revenue Acts of 1918 and 1921, existed in its case and that the respondent is unable to determine accurately its invested capital. Counsel for petitioner on brief summarizes the points relied upon in support of such contentions and states that:

On the present record it is submitted that the Board should hold that the petitioner is entitled to a comparative assessment for the years 1920 and 1921 because—

(a) The Tulalip contract, which was the chief source of petitioner's income for 1920 and 1921, had a large bonus value on acquisition which is entirely excluded from petitioner's statutory invested capital:

(b) The Tulalip contract caused abnormalities in petitioner's income for 1920 and 1921—on account of no deduction for interest and taxes and substantial saving in freight, which items usually enter into cost of production:

(c) The credit of petitioner's stockholders and their friends was contributed to the company and used in securing and carrying out the Tulalip contract:

(d) Petitioner paid inadequate and low salaries to its officers for the valuable services rendered, said officers being its sole stockholders:

which facts constitute abnormal conditions affecting the capital and income of petitioner for the years 1920 and 1921 within the meaning of Section 327(d), Revenue Acts of 1918 and 1921.

Petitioner is also entitled to comparative assessment for said years because its stockholders contributed substantial financial and cruising services to it as paid in surplus, the amount of which, because of lack of records, can not now accurately be determined, thereby bringing the petitioner's case within the provisions of subdivision (a) of Section 327, Revenue Acts of 1918 and 1921.

With respect to petitioner's contention relative to the bonus value of the Tulalip contract, it must be conceded that such contract had a very large value after it was secured by the petitioner. However, it should be borne in mind that the contract cost the petitioner nothing. The contract was for the purchase of timber and the amounts paid out by the petitioner under its terms constituted the purchase price of the timber which was sold later at a profit. Accordingly, we are of the opinion that the profits made by the petitioner during the taxable years under review were derived from the sale of the timber purchased under the contract and that they did not directly flow from the contract. We can see no difference between the petitioner's situation and that of any other taxpayer who is fortunate enough to be able to buy a quantity of goods at a low price and sell at a large profit. We do not believe that there existed any abnormalities in petitioner's income by reason of the contract in question, especially in view of the provisions of sections 327(d) of the Revenue Acts of 1918 and 1921, which specifically state that the earning of large profits does not in itself constitute a reason for special assessment.

Neither are we convinced that an abnormality existed in petitioner's income due to the fact that it was not required to pay interest on deferred payments or taxes on account of the timber purchased or because of a substantial freight differential existing in its favor. While it is true that moneys expended under items such as those enumerated constitute deductions from gross income and thus tend to reduce the amount of taxes otherwise payable, we are of the opinion that the advantages enjoyed by the petitioner with respect to such items were fortuitous and did not create an abnormality in income within the meaning of the statute. Petitioner is in no different position from that of any taxpayer who might set up a business where the market for its product was in close proximity to the source of raw material, where the State in which the business was located had a low tax rate, and where it was enabled to obtain credit at favorable interest rates.

The mere fact that the petitioner began its operations on borrowed capital through the extension of credit to it by its stockholders and

their friends does not, in our opinion, constitute such an abnormality as would entitle it to special assessment. Especially is this true in view of the fact that a comparative balance sheet of the petitioner showing its assets and liabilities for each year from 1912 to 1921, both inclusive, which was introduced in evidence, discloses that notes payable had disappeared from the liability side as early as December 31, 1918, and that its current liabilities for years ended December 31, 1920, and December 31, 1921, were represented by accounts payable in the amounts of $8,386.95 and $15,966.40, respectively. Even should it be conceded for purposes of argument that the credit extended to the petitioner at the beginning of its operations constituted an abnormality in invested capital, such condition had ceased to exist long prior to the taxable years under review.

Petitioner further claims, however, that it paid low and inadequate salaries to its officers for the valuable services rendered and that by reason thereof its deductions from gross income compared to those allowed others employed in the same line of business placed it at a disadvantage. Passing the question as to whether such disadvantage to the petitioner would constitute an exceptional hardship, we are not impressed by the evidence before us that the salaries paid its officers were inadequate. T. J. Hartley, secretary and treasurer of the petitioner from its formation in 1912, testified that the salaries paid petitioner's officers in 1920 and 1921 constituted reasonable compensation and that such salaries compared favorably with the salaries paid by other companies. In view of such testimony we can not concede this point.

The last point relied upon by the petitioner is that the value of services rendered the petitioner by officers and stockholders in cruising the timber purchased in the Tulalip contract constituted paid-in surplus, the amount of which, because of lack of records, can not now accurately be determined, and that therefore the respondent is unable to correctly determine the petitioner's invested capital. The evidence on this point indicates that George Miller and H. W. White, who were officers and stockholders of the petitioner prior to the acquisition of the Tulalip contract, looked over the ground generally, but did not make an intensive or close study of the timber which the petitioner contemplated purchasing. In view of such fact, we are convinced that the services rendered the petitioner by such officers and stockholders were no more than could be expected in the furtherance of corporate activities and that the petitioner had the benefit of no more than the usual and ordinary activities which it had a right to expect from its officers and for which it paid them a salary.

With respect to the activities of Roland H. Hartley, it must be conceded that he did make an intensive and thorough cruise of the

timber purchased and it is only reasonable to assume that in making such cruise he expended a substantial amount of money. Roland H. Hartley, however, was neither an officer nor a stockholder of the petitioner at the time he made the survey and cruise of the timber and it is significant to note that he became a stockholder and paid for the stock which he purchased 10 times its par value, due solely to the fact that the petitioner's bid for the Tulalip timber had been accepted. In this view of the situation it is unescapable that his activities were conducted primarily for his own interest, with a view of determining whether he should later purchase an interest in the petitioner. It may be assumed, perhaps, that the petitioner derived some incidental benefit from the activities of Roland H. Hartley in planning its operations after it had acquired the contract in question, although there is no evidence before us on this point. We are of the opinion therefore that the respondent is not unable to determine invested capital by reason of the activities of Miller, White, and Hartley, in surveying and cruising the timber prior to the making of the bid therefor.

The petitioner also contends that, if none of the points relied upon, standing alone, might be sufficient to bring it within the terms of the statute and constitute a basis for special assessment, all of them taken together indicate such abnormalities as would work an exceptional hardship upon the petitioner if it were not assessed upon a comparative basis. Our view, however, is that the petitioner carried on its business enterprise under extremely fortuitous circumstances, deriving from its operations a high rate of profit in each year. Such circumstances, we feel, fall far short of constituting abnormalities in income or invested capital which would work an exceptional hardship upon the petitioner and we are of the opinion that it is not entitled to special assessment for the years under review.

*Judgment will be entered for the respondent for $5,406.86 for 1920, and $3,603.46 for 1921.*