BADGER LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31109. Promulgated November 21, 1933.

*Phil D. Morelock, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

**OPINION.**

LANSDON: The respondent has held that two monetary obligations of the petitioner operated to reduce its statutory invested capital for the tax period ended April 30, 1920. One of these was an item of $85,236.48, representing the dividend which the petitioner declared June 4, 1919, payable to stock owners of November 1, 1919. The other was the petitioner's unpaid balance of $151,200 owing to Seibel for the purchase of his 185 shares of common stock.

Respecting the first of these items, the respondent concluded that petitioner's act on June 28, 1919, in crediting its dividend account for the full amount of the dividends declared was an appropriation of such avails to the accounts of its stockholders, notwithstanding the terms of the corporate resolutions which fixed later dates for payment and restricted the same to legal stock owners as of November 1, 1919. In other words the respondent treated that book entry as tantamount to a payment of the dividends as of that date, which, being within sixty days of the end of the prior tax period, made them attributable to that period under article 858 of Regulations 45.

We think the respondent was wrong in such conclusion, since the proof is that, notwithstanding such book entry, no payments in fact were due or made until after November 1, 1919. Under the terms of the resolution the dividend was payable only to the legal stock owners as of November 1, 1919. That limitation made such date the effective date of the dividends and in no event could they become a corporate obligation before that date. *Richter & Co.* v. *Light Co.*, 116 Atl. 600; *Cogswell* v. *Second Nat. Bank*, 60 Atl. 1059; *Second Church* v. *Church of Colegrove*, 74 Conn. 79; *Miller* v. *Andrews*, 142 N.E. 67. The book entries were ineffective to constitute an appropriation in the absence of legal authority for them. *Douglas* v. *Edwards*, 298 Fed. 229.

The petitioner claims that in view of the respondent's finding that it earned net income amounting to $489,808.24 in the period in

review, it necessarily follows that it had on hand available earnings to discharge the dividend payments when they became due, and that in these circumstances, under article 858, *supra*, its invested capital was in no way affected.

The portion of the article relied upon by petitioner reads as follows:

* * * For the purpose of computing invested capital a dividend paid after the expiration of the first sixty days of the taxable year will be deemed to be paid out of the net income of the taxable year to the extent of the net income available for such purpose on the date when it is payable. * * *

In view of the income shown, the petitioner's position would seem to be sound if, under the record, we may assume that it was earned and used to discharge the dividend obligations as they matured. Ordinarily it is assumed that dividends, when declared, relate to accumulated profits in being and not to anticipated earnings. Applying that rule to the facts shown, we must conclude that the profits which the petitioner's board intended to distribute when it passed the resolution on June 4 had been earned or would be earned prior to the date of payment, *although not necessarily available for immediate distribution*. Under the terms of the resolution the payments were postponed to and after the first day of the following November. In their aggregate these dividends amounted to less than 25 percent of petitioner's net income, and since only half of them were paid in November, and the balance in January and February 1919, we think it fair to assume, under the circumstances, that they were made from income that was available for such purpose at the payment dates and not from petitioner's invested capital. *Edwards* v. *Douglas*, 269 U.S. 204 (sustaining in part 298 Fed. 229). Respecting this item the contentions of the petitioner are sustained.

The respondent further reduced the petitioner's invested capital by this balance owing on the repurchase of its capital stock. The petitioner argues that this obligation should not be held, at least in its entirety, to effect its capital structure, for the reason (1) that at most it was made up of a series of installment debts maturing over a period of 88 months, (2) that the contract of sale was wholly executory, and (3) that the payments called for were, or could have been, made out of its current earnings.

We are unable to agree with these contentions. The whole sum of $222,000 became a liability upon which it paid interest on and from the date it purchased the stock from Seibel. After that date it was owner of the stock, payment was secured by collateral, and the contract was wholly executed. That the monthly payments might have been paid from the petitioner's current income is of no importance in the absence of any proof to show that they were so paid. We, therefore, hold that the debt accrued by petitioner was a charge

against capital and the determination of the respondent respecting it is sustained. *American Cigar Co.*, 21 B.T.A. 464. *Fairmount & Cleveland Coal Co.*, 12 B.T.A. 1296; *National Tea Co.*, 17 B.T.A. 1222; *Clearfield Lumber Co.*, 3 B.T.A. 1282.

Petitioner's claim for special assessment under the provisions of section 327 of the Revenue Act of 1918 is denied in the absence of a showing to establish its right to the same under the statute. This claim is based wholly upon the argument that, because of (1) borrowed capital used in its business in the period reviewed, (2) inadequate salaries paid to its officers, and (3) errors in its closing inventories, abnormalities in income and invested capital warranted such relief.

On the element of borrowed capital evidence was introduced to show that petitioner carried a large volume of notes payable on its books during this period, but no proof whatsoever to show that they represented borrowed capital, or, if so, that such capital was used as an income-producing factor in the petitioner's business. On the other hand, evidence from petitioner's books indicated that it borrowed money for the use of its officials during this period and made investments for their use and benefit which in the aggregate exceeded the sums it claims to have borrowed during the period. *United Shoe Store*, 2 B.T.A. 73; *Eagle Piece Dye Works*, 10 B.T.A. 1360.

The petitioner's proof to show that it underpaid its officers during this period failed to convince us that such salaries were inadequate, or that they were out of proportion to salaries paid by like business corporations for similar services performed. Low salaries *per se* do not create an abnormality. *Chappelow Advertising Co.*, 13 B.T.A. 1090; *Moody & Waters Co.*, 14 B.T.A. 290; *Kossar & Co.*, 16 B.T.A. 952.

The overstated inventories, upon which the petitioner lays much stress, were only partly proved by the showing that in two of its fifty retail lumber yards the inventories were out of proportion to what they had been in prior years. Under such facts the most petitioner would be entitled to do would be to correct those inventories so as to make them reflect its true income, but this it has failed to do. The conditions shown in petitioner's business structure within the period reviewed were all avoidable and susceptible of correction by it. At most, it has not been shown that they created any abnormalities which worked a hardship upon petitioner which would entitle it to special relief. *Cohn Goldwater Co.*, 15 B.T.A. 970; *Wright Lumber Co.*, 17 B.T.A. 814; *Peck Coal Corp.*, 15 B.T.A. 189; *Dibrell Bros., Inc.*, 18 B.T.A. 1046; *Clark Brown Grain Co.*, 18 B.T.A. 937; *Everett Toggery Co.*, 19 B.T.A. 1098.

*Decision will be entered under Rule 50.*